WARNER v. SOUTHALL.

(Supreme Court, Appellate Division, Fourth Department. June 18, 1898.)

SLANDER—INTENT TO CHARGE ARSON—EVIDENCE.

In an action for slandering plaintiff by accusing him of arson, it appeared that defendant had said that, if reports in circulation were true, plaintiff knew as much about how the fire occurred as anybody; and that plaintiff was on the road that night, and must know something about it. The answer alleged that defendant's property had been destroyed by an in-

cendiary fire, and that plaintiff had a motive for burning it. *Held*, that the question whether by the words spoken defendant intended to charge plaintiff with having burned his property was for the jury.

Appeal from special term.

Action by James H. Warner against Edward W. Southall for slander. The action was dismissed by the court, and from an order denying a motion for a new trial plaintiff appeals. Reversed.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

Edward P. Coyne, for appellant.

Charles D. Newton, for respondent.

FOLLETT, J. This action was begun February 1, 1896, to recover damages for slanderous words alleged to have been spoken by the defendant of and concerning the plaintiff. The complaint contains two counts, charging the defendant with having on three different occasions uttered words imputing the crime of arson to the plaintiff. The answer contains a general denial, and also sets up facts mitigating the speaking of the words alleged to have been uttered. In the answer it is alleged that the defendant's barns were destroyed August 13, 1895, by an incendiary fire, and that the plaintiff had a motive for burning the barns. On the trial Charles Saxton testified that the defendant said "that, if the reports in circulation were true, he thought that Warner knew as much about how the fire occurred as anybody. * * * He said something or other about a man down where Warner kept his horse. He said somebody—I don't know who it was now—said Warner's horse was not in the barn at midnight, when he came home that night." James Cottrell testified that "he asked defendant, 'How did they [your barns] get afire?' and he says, 'I suppose they were set afire.' * * * I asked him if he had got suspicions about the fire; and he said Jim Warner was seen over on the south road that night. * * * He said he thought Jim Warner must know something about it." On the cross-examination this witness testified: "I asked him, 'How did they get afire?' and he said he thought they were set afire; and he said Warner was upon that road that night; that the horse wasn't home that night." Bradley Burnett testified: "I said to defendant, 'It is too bad the horses burned up;' and he says that,—speaking something about the fire,—he said, if all the reports were true of what he heard, that Jim Warner knew as much about the fire as any one." Two other witnesses testified that the defendant said to them that, if the reports were true, "Warner knew as much about the fire as anybody." At the close of the plaintiff's evidence the court granted a nonsuit, on the ground that the words uttered did not charge the plaintiff with the crime of arson, to which ruling an exception was taken. The language which the defendant used should, as against him, be construed by the allegations in his answer. It is set·up in the answer, as before stated, that the barns were destroyed by an incendiary fire, and that the plaintiff had a motive for burning the barns. Construing the words uttered by the allegations in the answer, it was a question of fact for the jury to say whether the defendant intended by the words

spoken to charge the plaintiff with having burned the barns, and the court erred in granting a nonsuit.

The order should be reversed, and a new trial granted, with costs to the appellant to abide the event.    All concur.